CHRISTINE JANICE UBERTACCIO, Plaintiff v. RICHARD UBERTACCIO, Defendant

No. COA02-1531

(Filed 2 December 2003)

**Divorce— equitable distribution—marital property—proceeds from sale of stock**

 The trial court did not err in an equitable distribution case by concluding plaintiff wife's stock and proceeds therefrom were divisible property and by requiring plaintiff to pay defendant husband fifty-five percent of the proceeds from the sale of 10,000 shares of stock she had received from her employer even though plaintiff was required to remain employed after the date of separation in order for the shares to vest.

 Judge Levinson concurring in result only.

 Judge Wynn dissenting.

 Appeal by plaintiff from judgment entered 25 June 2002 by Judge Victoria Roemer in Forsyth County District Court. Heard in the Court of Appeals 9 September 2003.

 *C.R. "Skip" Long, Jr., for plaintiff-appellant.*

 *Morrow Alexander Tash Kurtz & Porter, by John F. Morrow and Jon B. Kurtz, for defendant-appellee.*

TYSON, Judge.

 Christine Janice Ubertaccio ("plaintiff") appeals from an equitable distribution judgment filed 25 June 2002. The court required plaintiff to pay defendant fifty-five percent (55%) of the proceeds from the sale of stock she had received from her employer. We affirm.

## I. Background

 Plaintiff and defendant were married on 3 October 1981, separated on 29 January 2000, and divorced on 19 May 2001. The parties are the parents of two children. Plaintiff filed a complaint seeking equitable distribution of the marital and divisible property on 25 April 2000. Defendant filed an answer and counterclaim also seeking an equitable division of the marital and divisible property. The parties signed an equitable distribution pretrial order on 10 April 2001 and subsequently reached an agreement allocating many of the marital

assets. The parties did not resolve the classification, valuation, and distribution of stock that plaintiff had received from her employer.

Prior to the parties' separation on 29 January 2000, plaintiff entered into an employment agreement on 10 December 1999, with ASA Corporation ("ASA"), a "spin-off division" from her former employer, Lucent Technologies, Inc. ("Lucent"). As part of the consideration of the employment agreement, plaintiff was eligible to receive 10,000 shares of ASA stock during the year 2000. She received 3,000 shares of ASA stock on 31 May 2000, and the remaining 7,000 shares on 18 July 2000. ASA's Stock Program Plan stated that the plan administrator "may" require employees to execute a covenant not to compete in order for an employee to receive greater than or equal to 8,000 shares. Plaintiff signed the covenant on 1 September 2000. Subsequently, AON Corporation ("AON") purchased ASA and plaintiff obtained 4,298 shares of AON stock in exchange for her ASA stock.

The tax basis of the ASA common stock at conversion was $16,438.62. The fair market value of the AON stock at conversion was $39.19 per share, or $168,483.62. Plaintiff incurred tax liability in the year 2000 on the gain of $152,000.00. AON withheld 1,954 shares for payment of taxes and issued a stock certificate for 2,344 shares on 2 November 2000. Shortly thereafter, plaintiff sold her 2,344 shares and received net proceeds of $82,637.00.

The trial court's judgment: (1) found the entire net proceeds from the sale of stock to be divisible and, in the alternative, marital; (2) awarded defendant an unequal distribution of fifty-five percent (55%); and (3) required plaintiff to pay defendant fifty-five percent (55%) of the proceeds from the sale of the stock. Plaintiff appealed.

## II. Issues

Plaintiff asserts the trial court erred by: (1) classifying the stock and proceeds received from the sale as divisible, and in the alternative, marital property; (2) failing to apply a coverture formula in valuing the stock for equitable distribution; and (3) failing to make sufficient findings of fact regarding employment, grant, vesting, and maturity dates, as well as the impact of the covenant not to compete.

## III. Classification of the Stock

Plaintiff assigns error to the trial court's conclusion that the stock and proceeds therefrom were divisible property and, in the alternative, marital property. The trial court must classify, value, and

distribute marital property and divisible property in equitable distribution actions. *Fountain v. Fountain*, 148 N.C. App. 329, 332, 559 S.E.2d 25, 29 (2002). Our statutes define "marital property" as "all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties, and presently owned. . . . Marital property includes all vested and nonvested pensions, retirement, and other deferred compensation rights." N.C. Gen. Stat. § 50-20(b)(1) (2001).

"Divisible property" includes:

[a]ll property, property rights, or any portion thereof received after the date of separation but before the date of distribution that was acquired as a result of the efforts of either spouse during the marriage and before the date of separation, including, but not limited to, commissions, bonuses, and contractual rights.

N.C. Gen. Stat. § 50-20(b)(4)(b) (2001).

"Separate property" is defined as "all real and personal property acquired by a spouse before marriage or acquired by a spouse by bequest, devise, descent, or gift during the course of the marriage." N.C. Gen. Stat. § 50-20(b)(2) (2001).

The party claiming that property is marital has the burden of proving by a preponderance of the evidence that the property was acquired, by either or both spouses, during the marriage and before the date of separation, and is presently owned. *Lilly v. Lilly*, 107 N.C. App. 484, 486, 420 S.E.2d 492, 493 (1992). Once this burden is met, "the burden shifts to the party claiming the property to be separate to show by a preponderance of the evidence that the property meets the definition of separate property." *Id.*

Our Court has held that stock options are similar to retirement benefits:

stock options are a salary substitute or a deferred compensation benefit and if received during the marriage and before the date of separation and acquired as a result of the efforts of either spouse during the marriage and before the date of separation, stock options are properly classified as marital property, even if they cannot be exercised until a date after the parties divorce.

*Fountain*, 148 N.C. App. at 337, 559 S.E.2d at 32. Stock rights are properly classified as divisible property if acquired as a result of a spouse's efforts during the marriage but not received until after the

## UBERTACCIO v. UBERTACCIO

[161 N.C. App. 352 (2003)]

date of separation and before the date of distribution. *Id.* Stock rights are neither marital nor divisible if "received during the marriage before the date of distribution," but "not in consideration for services rendered during the marriage and before the date of separation." *Id.* at 338, 559 S.E.2d at 32.

Plaintiff argues that the stock rights were neither granted, vested, nor matured as of the date of separation. Pursuant to her employment agreement, plaintiff was required to successfully complete her evaluation period before she received stock on 31 May 2000, and 18 July 2000. Both dates occurred several months after the parties' date of separation. ASA's Stock Program Plan stated that "[t]he Plan Administrator may require the Participant to execute a Covenant Not To Compete in order to receive a grant . . . greater than or equal to 8000 Units." (emphasis supplied). Plaintiff contends that her covenant not to compete indicates the shares were received after the marriage ended and not in consideration for services rendered during the marriage.

Defendant contends that plaintiff's employment and stock were acquired as a result of plaintiff's experience and efforts during the twenty-year marriage and before the date of separation. Plaintiff's employment agreement, dated 10 December 1999, clearly states, "If you are still an employee in good standing with ASA, and assuming a January start date, you will be eligible to receive a stock grant in 2000 of 10,000 shares."

Although plaintiff's shares of stock did not vest until after the date of separation, her employment agreement, executed during the marriage, created her right to those shares. It is uncontested that plaintiff signed the employment agreement in December, 1999 and began working with ASA in January, 2000 while married to defendant and prior to the parties' date of separation. Plaintiff's entitlement to receive those shares of stock arose during the existence of the marriage and prior to the parties' date of separation. She actually received and sold the stock prior to the date of distribution. Plaintiff failed to prove the stock should be classified as separate property. The trial court properly classified the stock, and the proceeds therefrom, as divisible and/or marital property. This assignment of error is overruled.

The dissenting opinion disagrees with the trial court's classification of the stock as marital property. That opinion contends that plaintiff's stock grant was conditioned: (1) on her remaining an

employee in good standing at the end of her six-month evaluation period, and (2) upon signing a covenant not to compete. Plaintiff received the right to the stock in her employment agreement signed on 10 December 1999, during the marriage and before the date of separation. The employment agreement granting plaintiff's right to the stock required only two conditions: (1) plaintiff must begin work in January, and (2) plaintiff must remain an employee for six months. Her execution of the covenant not to compete was not a condition stated in plaintiff's employment agreement. ASA's Stock Program Plan provided that plaintiff's signing of a covenant not to compete was left to the discretion of the plan administrator. Plaintiff did not sign the covenant not to compete until *months after* she received over 8,000 shares. Our Court has held, and we are bound by precedent, "our equitable distribution statutes have been amended to define marital property to include vested and nonvested pensions. N.C. Gen. Stat. § 50-20(b)(1) (1999). Thus, a correct and current reading of our equitable distribution statutes is that marital property includes vested *and nonvested* stock options." *Fountain*, 148 N.C. App. at 337 n.12, 559 S.E.2d at 32 n.12 (emphasis supplied).

The dissenting opinion also disagrees with the trial court's classification of the stock as divisible property, stating that the "conditional stock options" were earned as a result of postseparation actions or activities. At the date of separation, the only "condition" remaining for the stock to vest and issue was plaintiff's continued employment with ASA. This is a normal and expected condition in deferred compensation and stock plans that vest in the future. Plaintiff's stock was not earned from postseparation activities other than continued employment. Plaintiff received the stock right in her employment agreement. The employment agreement and the commencement of plaintiff's employment both occurred while she was married to defendant and created a nonvested interest in the 10,000 shares of stock. These shares vested, were issued, and sold prior to the date of distribution. The trial court properly classified the stock options as divisible property. This assignment of error is overruled.

## IV. Valuation of the Stock

Plaintiff also assigns error to the trial court's failure to apply a coverture formula when awarding defendant's share of the proceeds from the sale of the stock. North Carolina has not enacted or adopted any definitive approaches for valuing stock rights. N.C. Gen. Stat. § 50-21(b) (2001) requires marital property to be valued as of the date of the parties' separation and divisible property to be valued as

of the date of distribution. We apply an abuse of discretion standard and will uphold the trial court's valuation if it "is a sound valuation method, based on competent evidence, and is consistent with section 50-21(b)." *Fountain*, 148 N.C. App. at 339, 559 S.E.2d at 33. When distributing deferred compensation benefits, our statutes require the award to be distributed

> using the proportion of time the marriage existed (up to the date of separation of the parties), simultaneously with the employment which earned the vested and nonvested pension, retirement, or deferred compensation benefit, to the total amount of time of employment. *The award shall be based on the vested and nonvested accrued benefit*, as provided by the plan or fund, *calculated as of the date of separation*, and shall not include contributions, years of service, or compensation which may accrue after the date of separation.

N.C. Gen. Stat. § 50-20.1(d) (2001) (emphasis supplied). Although scant case law exists on this new statute, we recently held that the valuation method prescribed by this section is known as the "fixed percentage method." *Gilmore v. Garner*, 157 N.C. App. 664, 670, 580 S.E.2d 15, 20 (2003). When expressed as a fraction, the numerator is "the total period of time the marriage existed (up to the date of separation) simultaneously with the employment which earned the vested pension or retirement rights," with the denominator being "the total amount of time the employee spouse is employed in the job which earned the vested pension or retirement rights." *Id.* (citations omitted).

Plaintiff argues that defendant should receive only a portion of the 10,000 shares, and asserts she worked for ASA only twenty-nine days before separating from defendant. Defendant contends that all 10,000 shares of stock were marital or divisible property, despite the fact plaintiff was required to remain employed after the date of separation in order for the shares to vest. The trial court made specific findings of fact that the stock at issue was earned as a consequence of plaintiff's marital and preseparation activities:

> (10) The Court specifically finds that the AON Corporation stock and proceeds derived therefrom by the plaintiff in the year 2000 (after the date of separation, but before the date of distribution) was acquired as a result of the efforts of plaintiff during the marriage and before the date of separation, said efforts including, but not limited to, bonuses and contractual rights.

Plaintiff acquired her right to the 10,000 shares by her employment agreement dated 10 December 1999, and began working in January, 2000, while married to defendant and prior to the date of separation. Plaintiff did not pay money for these shares. The employment agreement did not require her to sign a covenant not to compete in order to receive these shares. ASA's Stock Program Plan gave the plan administrator discretion whether to require employees to sign a covenant not to compete. Plaintiff's employment agreement with ASA does not recite that the stock grant will be proportional to her contribution or years of service with ASA. Her benefits did not "accrue" based on the amount of time she was employed with ASA. N.C. Gen. Stat. § 50-20.1(d) (2001). As long as she remained employed with ASA, she would receive 10,000 shares of stock.

Plaintiff was married, living with defendant, and had been employed by Lucent at the time she was offered and accepted employment with ASA. ASA was a "spin-off division" of Lucent. It was reasonable for the trial court to infer that plaintiff's employment with ASA resulted from experience she gained while employed with Lucent during their twenty-year marriage.

On the parties' date of separation, plaintiff owned a nonvested interest in 10,000 shares of ASA stock. Plaintiff's acquired benefit at the date of separation was the entire 10,000 shares of stock. On the date of distribution, these shares had vested, were issued, and had been liquidated. Valuation of the stock at the date of distribution was the converted value of the original 10,000 shares. The trial court's judgment distributed stock that had been issued and sold after all the contingencies had been satisfied. The trial court did not err in awarding defendant a portion of the 10,000 shares of stock since plaintiff acquired her interest in the stock during their marriage. This assignment of error is overruled.

## V. Findings of Fact

Plaintiff argues the trial court made insufficient findings of fact, including the failure to make specific findings relating to the classification and valuation of the stock. Plaintiff contends the trial court is required to make more specific findings of fact regarding employment, grant, vesting, and maturity dates, as well as the impact of the covenant not to compete. Defendant contends the trial court's findings of fact sufficiently and clearly indicate the valuation of the stock was unaffected by any of plaintiff's activities after the parties separated.

"The trial court's findings concerning valuation are binding on this Court if supported by competent evidence." *Fountain*, 148 N.C. App. at 338, 559 S.E.2d 32. Plaintiff presented exhibits, including her employment agreement with ASA and the stock agreements, along with other evidence and testimony. The trial court's judgment recites the dates necessary for the court to make its determination, as well as the evidence it relied upon to support its findings. The judgment also includes findings concerning the grant dates, the circumstances surrounding the substitution of ASA stock for AON stock, the date of separation, and the value of the stock. Substantial evidence supports the trial court's findings of fact.

The dissenting opinion asserts that the trial court made insufficient findings of fact and cites the case of *Hall v. Hall*, 88 N.C. App. 297, 363 S.E.2d 189 (1987). Although the issues were similar, we specifically recognized in *Fountain v. Fountain* that North Carolina's equitable distribution statutes were amended after *Hall* was decided. *Fountain*, 148 N.C. App. at 337 n.12, 559 S.E.2d at 32 n. 12 ("Since Hall . . . our equitable distribution statutes have been amended to define marital property to include vested and nonvested pensions."). The dissenting opinion's reliance on *Hall* is misplaced.

The trial court made sufficient findings of fact that are supported by substantial evidence to make a determination regarding the classification, valuation, and distribution of the stock. This assignment of error is overruled.

### VI. Conclusion

The trial court properly classified the stock plaintiff received pursuant to her employment agreement as divisible and, in the alternative, marital property. The trial court did not err in valuing the stock and awarding defendant fifty-five percent (55%) of the proceeds from the sale of 10,000 shares of stock. The trial court made sufficient findings of fact relating to these classifications and valuations. The trial court's equitable distribution judgment is affirmed.

Affirmed.

Judge Levinson concurs in the result with a separate opinion.

Judge Wynn dissents in a separate opinion.

LEVINSON, Judge concurring in result only.

I disagree with the application of equitable distribution principles in the other opinions. Plaintiff's central contention on appeal is that the trial court erroneously classified and/or distributed the "ASA stock options" and its proceeds. Contrary to this contention and the characterizations of my colleagues, the "stock grants" to plaintiff were not stock options, vested or nonvested.

At issue is the following recitation of plaintiff's employment benefits:

> As an employee-owned company, we are pleased to offer ASA stock grants to our new employees. If you are still an employee in good standing with ASA, assuming a January start date, you will be eligible to receive a stock grant in 2000 of 10,000 shares.

Plaintiff's "stock grant" was with reference to the ASA Phantom Stock Program (hereinafter "Program") that outlined unique eligibility, terms, conditions and other features. Plaintiff executed two identical ASA Phantom Stock Program Agreements, which incorporated all the terms of the Program. Plaintiff received, contemporaneous with her employment engagement, the right to receive "units" of value which were part of a hybrid form of phantom stock program so long as she remained an employee for a specific duration. According to Section 6 of the Program, the units were

> intended to represent the cash equivalent of one Share, although a Unit is not a legal security issued by ASA and, as such, confers no stockholder rights. In addition, no actual Shares shall be issued pursuant to the Plan or the individual Phantom Stock Agreements issued hereunder. The rights of Participants with respect to Units shall be limited to those rights which are specifically enumerated in the Plan and in the individual Phantom Stock Agreements issued to Participants hereunder, and such rights shall be, for all purposes, unsecured contractual creditor's rights against ASA only, having a parity with the right of all other general creditors of ASA.

Section 2(r) provided that each "[u]nit shall mean a contingent right, subject to all of the terms of the Plan and the applicable Phantom Stock Agreement, to receive an amount pursuant to Section 7 (less required withholdings)." Section 7(d) defined the compensation formula as follows: "Amount payable per Participant = (number of Participants' outstanding Units) multiplied by (the dividend per share

declared by the Board)." "Share" is defined as "one (1) share of Common Stock[.]" Section 5 states, "[a]ll full-time and part-time . . . [e]mployees of the Company who are not eligible to participate in ASA's Stock Grant Program are eligible to receive a grant of Units. . . ." Section 9 describes circumstances under which the total number of units subject to the Program could be adjusted; such adjustments were dependant upon changes in the number of equity shares of common stock.

"A stock option is the right, or option, to buy a certain number of shares of corporate stock within a specified period for a fixed price." Clarence E. Horton, Jr., *Principles of Valuation in North Carolina Equitable Distribution Actions*, Institute of Government at the University of North Carolina at Chapel Hill, April 1993, Special Series No. 10 at 35.

> According to *Harvard Business Review* author Brian J. Hall . . . executive stock options are "call options." They give the holder the right, but not the obligation, to purchase a company's shares at a specified price, called the "exercise" or "strike" price. Most often, the exercise price matches the stock price at the time of the grant; these options are granted "at the money." If an exercise price is higher than the stock price, it is granted "out of the money." It is a premium option. If an exercise price is lower than the stock price, it is granted "in the money." It is a discount option.

*Equitable Distribution of Stock Options*, 17 Equitable Distribution Journal 85 (Aug. 2000).

The trial court's equitable distribution order included the following:

> (9) Prior to the separation of the parties on January 29, 2000, the Plaintiff had contracted to be employed by the ASA Corporation. As a part of the employment contract, plaintiff was entitled to receive 10,000 shares of ASA Corporation stock at the end of her probationary period. The ASA Corporation was a spinoff division of her former employer, Lucent Technologies, Inc. After the separation of the parties, the ASA Corporation was purchased by AON Corporation; and, as a result of said purchase, the plaintiff obtained the right to receive 4,298 shares of AON Corporation stock on October 2, 2000. The tax basis of the ASA common stock at the time of exchange was $16,438.62. The fair market value of

the AON stock was $39.19 per share, or $168,483.62. The plaintiff was therefore required to pay taxes in the year 2000 on the gain of $152,000. The AON Corporation therefore withheld 1,954 shares for payment of the plaintiff's taxes and issued a stock certificate to the plaintiff for 2,344 shares. Therefore, the plaintiff was credited with having $76,577.26 withheld by her employer to be applied to her 2000 federal income taxes. Shortly thereafter, the plaintiff sold her 2,344 shares and received $82,637.00.

(10) The Court specifically finds that the AON Corporation stock and proceeds derived therefrom by the plaintiff in the year 2000 (after the date of separation, but before date of distribution) was acquired as a result of the efforts of plaintiff during the marriage and before the date of separation, said efforts including, but not limited to, bonuses and contractual rights. The Court makes the ultimate finding of fact that said AON Corporation stock and the proceeds derived therefrom by the plaintiff constitute divisible property pursuant to N.C.G.S. [§] 50-20(b)(4).

That the ASA Phantom Stock Program had features which mirror, in some ways, those attendant to stock options, does not make the these phantom "stock grants" into a form of stock options. In addition, the following facts do not make the "grant" of these units into stock options, vested or nonvested: (1) the "units" would not be issued until plaintiff completed the required employment duration; (2) a tax basis was ultimately utilized; (3) plaintiff ultimately received an AON Corporation common stock certificate representing 2,344 shares, each with a $1.00 par stock value; (4) the AON corporation retained certain shares to satisfy tax obligations as a result of the grant; (5) Section 7 of the Program utilized the term "vest" and outlined "vesting" timelines; and (6) the cash payment to holders of units was tied to the dividends paid to ASA common stock shareholders. Moreover, essential characteristics of stock options—the right to purchase shares at a specific price during a specific duration with reference to a collateral price—are not a part of the interest at issue here. And there is nothing in the Program that references the "exercise" of anything.[1]

---

1. The dissent suggests that because the assignments of error and the parties' briefs call the ASA units "stock options" that we should treat them as such on appeal. This, however, overlooks an obvious problem. The trial court judge did not find that the ASA grant consisted of "stock options." Moreover, it is not at all evident that the trial court was even presented with an argument that these were nonvested stock options such that *Fountain*, 148 N.C. App. 329, 559 S.E.2d 25 (2002), and/or the coverture formula in G.S. § 50-20.1 should apply. As an appellate court, our function is to

UBERTACCIO v. UBERTACCIO

[161 N.C. App. 352 (2003)]

Because there are no stock options in this case, this Court's opinion in *Fountain v. Fountain*, 148 N.C. App. 329, 559 S.E.2d 25 (2002), is not directly implicated.[2] In addition, the provisions of G.S. § 50-20.1 do not control the classification and distribution of these assets. Contrary to the implication of the decision in *Fountain*, I do not believe that all forms of "salary substitutes" or compensation, the receipt of which is deferred to some point in the future, must be classified and distributed in accordance with the provisions and limitations of G.S. § 50-20.1. *See* G.S. § 50-20.1(d) (awards pursuant to this statute must be determined using the "coverture fraction"); G.S. § 50-20.1(a) and (b) (limiting the method of distribution for awards made pursuant to this statute). Rather, the clear intent of that statute is to provide for the classification and distribution of only those "other forms of deferred compensation" that are in the nature of pension and retirement benefits. To interpret G.S. § 50-20.1 so broadly as to cover assets such as those at issue in this case would render G.S. § 50-20(b)(4)(b) meaningless.

Because the trial court in this case found that the proceeds from the stock grants were acquired as the result of the efforts of plaintiff during the marriage and before the date of separation, and that the proceeds were received by plaintiff before the date of distribution, the trial court correctly concluded that these assets fall within the plain language of the definition of divisible property set out in G.S. § 50-20(b)(4)(b).[3]

pass upon assignments of error made by the parties; assignments of error may only be made pursuant to rulings made by the trial court on the basis of the arguments made at trial. N.C. R. App. Proc. 10(b)(1). We must not, therefore, consider arguments which were not presented to the trial court for determination and which are argued for the first time on appeal. *Id.*

2. The lead opinion provides differing characterizations of the ASA units at issue. They are interchangeably described as "ASA common stock" (when there never was any grant of ASA common stock), "stock grants", and "stock options." Adding further confusion, in discussing this Court's holding in *Fountain*, the lead opinion replaces the term "stock options" as utilized in that case with "stock rights." In the present appeal, I emphasize that plaintiff's argument is that the ASA grant involved nonvested stock options and that, pursuant to *Fountain* and the coverture formula in G.S. § 50-20.1, the trial court erred. While the lead opinion's use of different terms suggests its reliance on *Fountain* is particularly suspect, I interpret its holding as resting, in large measure, on the treatment of the ASA units as nonvested stock options and erroneously applying and extending *Fountain*.

3. We cannot review the sufficiency of the evidence to support these findings because the record on appeal does not include a transcript. Therefore, we must accept the findings of the trial court as conclusive on the issue of whether and to what extent the stock grants and proceeds were earned as the result of the efforts of plaintiff during the marriage and before the date of separation.

In summary, plaintiff's central contention on appeal, that the trial court committed legal error in classifying and/or distributing the "ASA stock options," is erroneous. Second, the trial court's findings of fact are unchallenged and therefore binding on this Court. In my view, the appellate record reveals the trial court judge complied with our equitable distribution statutes in all regards.[4] I vote to affirm.

WYNN, Judge dissenting.

Preliminary, I point out that in nearly all of the approximately 1600 written opinions that this Court writes each year, each three-judge panel is remarkably able to fashion out a majority opinion in which at least two of the three judges agree. This case presents the rare situation where neither of the three judges on this panel agrees on the reasoning for resolving the issues before us. *But see State v. Alston*, —— N.C. App.——, ——S.E.2d —— (filed 2 December 2003) (COA02-1612). Thus, there is no majority opinion in this case, only a majority agreement as to the result since Judge Levinson writes a second opinion concurring only in the result of Judge Tyson's opinion, and I dissent from both opinions. Accordingly, neither the first, second nor dissenting opinion carries any precedential value. To obtain a definitive opinion on the issues they present, the parties must now make an appeal to the Supreme Court of North Carolina, our State's en banc appellate court.

In this case, less than two months before the parties separated, ASA offered employment, by letter dated 10 December 1999, to Ms. Ubertaccio with a start date of 1 January 2000. Under that offer of employment, Ms. Ubertaccio *could* become eligible to receive a

---

4. The plaintiff has essentially framed the issue on appeal as whether, as a matter of law, nonvested stock options with contingencies require a District Court Judge to hold that the options are, at least in part, separate property earned as a result of nonmarital efforts. Alternatively, plaintiff asks this Court to hold that nonvested stock options are, as a matter of law, necessarily within the ambit of the coverture formula in G.S. § 50-20.1. Though reaching different results, the other opinions reveal a critical and common fallacy. In general, they have improperly replaced this Court's judgment with that of the District Court and not deferred to the trial court's evaluation of the relative importance of various evidentiary facts surrounding this asset. This is clearly erroneous, especially when one considers the infinite variety of "salary substitutes" that might be found to have no connection (or some) to marital efforts—or a wide variety of assets that may have more than one component—or any number of other assets our District Court Judges must classify and distribute. It cannot be, as the other opinions suggest, that necessarily, as a matter of law, an asset like that at issue in this case must be all marital or all divisible or all separate or must be a certain combination of these.

10,000 share ASA stock grant[5] in the year 2000 conditioned on (1) her remaining an employee in good standing at the end of her six-month evaluation period, and (2) upon signing a covenant not to compete (to receive in excess of 8,000 shares).[6] For the twenty-nine days that Ms. Ubertaccio was employed by ASA before the parties separated on 29 January 2000, Judge Tyson concludes that the conditional stock agreement rendered the stock that she ultimately received upon completing those conditions after the parties separated, marital. On different grounds not presented by either of the parties[7], Judge Levinson joins Judge Tyson in affirming the unequal award of $45,100.00 (55%) to Mr. Ubertaccio out of the total stock proceeds of $82,637.00. I dissent.

As stated in *Fountain v. Fountain,*. 148 N.C. App. 329, 337, 559 S.E.2d 25, 32 (2002) (emphasis supplied),

> "[S]tock options are a salary substitute or a deferred compensation benefit and *if received during the marriage and before the date of separation and acquired as a result of the efforts*

---

5. The concurring in the result opinion seeks to make a distinction between "stock grants" and "stock options." However, under the language of the contract, at best, the company made a "conditional stock offer" to Plaintiff. That language states, "If you are still an employee in good standing with ASA, . . . then you will be eligible to receive a stock grant." Surely, the contract language does not "grant" any stock to Plaintiff at the time of the signing. Likewise, I disagree with the first opinion's use of the term "stock rights." No rights were acquired until Plaintiff completed the conditions for receiving stock grants. Since the stocks were neither rights nor granted, I believe the term "stock options" more accurately reflect the conditional stock offer made to the Plaintiff under the terms of the employment contract.

6. My contention that Plaintiff's stock rights were conditioned on (1) her remaining an employee in good standing at the end of her six-month evaluation period, and (2) upon signing a covenant not to compete, is supported by the record. The record on appeal contained the letter from ASA offering employment to Plaintiff which states, "Your first six months of employment will be considered an evaluation period." and "If you are still an employee in good standing with ASA, and assuming a January start date, you will be eligible to receive a stock grant in 2000 of 10,000 shares." Moreover, the covenant not to compete agreement states explicitly that the covenant was given in consideration of units of stock in excess of 8,000.

7. Neither the trial judge nor the parties to this appeal considered the concurring in the result opinion's distinction between "stock options" and "stock grants" to be an issue in this matter. Indeed, plaintiff argues that the trial court erred by finding the stock options to be marital property. In response, defendant states in his brief, "The offer of employment by ASA to the Appellant, . . . is clear evidence that Appellant was in receipt of a nonvested interest in the stock options . . . ." Moreover, even assuming this was an "obvious issue", our review does not permit this Court to comb the record and examine it for "obvious" issues. In any event, the contract makes it clear that the plaintiff did not receive "stock grants" at the time of her separation.

*of either spouse during the marriage and before the date of separation*, stock options are properly classified as marital property, even if they cannot be exercised until a date after the parties divorce."

Thus, *Fountain* teaches that to be classified as marital, stock options must be (1) received during the marriage, (2) before the date of separation, and (3) acquired as a result of the efforts of either spouse during the marriage and before the date of separation. In short, I would not extend *Fountain* to allow a party to obtain the benefits of a conditional stock offer that are received after separation.

Indeed, the record shows that Plaintiff did not become contractually entitled to receive shares prior to separation. To the contrary, Plaintiff received only an opportunity to receive stock options if she fulfilled the conditions of employment. Before the date of separation, she had received no stock options; rather, the stock options in this case were not received until months after the date of separation when Ms. Ubertaccio completed her evaluation period. Moreover, Ms. Ubertaccio did not execute the Covenant Not to Compete until 1 September 2000, over eight months after the date of separation.[8] Thus, in light of the fact that the shares of stock were not "received during the marriage and before the date of separation," under *Fountain*, the trial court erred by classifying the conditional stock options as classified as marital property.[9]

Furthermore, the fact that Ms. Ubertaccio continued to work for more than five months and executed a Covenant Not to Compete to obtain stock options, fits within N.C. Gen. Stat. § 50-20(b)(4)(a)'s definition of "post-separation actions or activities." Thus, the trial court erred in determining that the net proceeds of the stock rights were divisible.

Additionally, even assuming that the conditional stock options were properly classified as marital, the record shows that the stock options were acquired partially as a result of services rendered

8. The Covenant Not To Compete states: "In consideration of a grant in excess of 8,000 Units in the ASA Phantom Stock Program, the undersigned employee . . . shall not engage in any prohibited competitive activity." Thus, the agreement not to compete was not required by ASA; rather, it was executed in "consideration of a grant in excess of 8,000" units of stock.

9. The contract between Plaintiff and ASA states, "If you are still an employee in good standing with ASA . . . you will *be eligible to receive* a stock grant in 2000 of 10,000 shares." (Emphasis added). Obviously, before plaintiff completed the conditions of her employment, she had no "right to those shares."

before the date of separation, and partially as a result of services rendered beyond the date of separation. Thus, the trial court erred in awarding Mr. Ubertaccio $45,100.00 of the $82,637.00 stock proceeds. *See* N.C. Gen. Stat. § 50-20.1(d).

Finally, the trial court failed to make sufficient findings of fact regarding the classification and valuation of the stock options. *See, Hall v. Hall*, 88 N.C. App. 297, 363 S.E.2d 189 (1987).[10] Here, the trial made no findings regarding on the dates the stocks were granted, vested or matured. Moreover, no finding of fact was made regarding the effect of the Covenant Not to Compete.

I, therefore, respectfully dissent.

───────

10. I agree that *Hall* was decided before the recent amendments to our equitable distribution statute. Nonetheless, neither the amendments to the statute nor *Fountain* abrogated it's holding requiring sufficient findings of fact.