JAMES S. RHEW, PLAINTIFF v. LUETTA F. RHEW (FELTON), DEFENDANT

No. COA99-606

(Filed 20 June 2000)

## 1. Divorce— alimony—dependency—findings not specific

An order finding defendant not to be a dependent spouse and denying her claim for alimony was remanded where the court's findings were insufficiently detailed or specific. The court must provide sufficient detail to satisfy a reviewing court that it has considered all relevant factors and it is not enough that there is evidence in the record from which such findings could have been made.

## 2. Divorce— alimony—standard of living—savings and retirement contribution

The trial court erred in an alimony action by failing to consider the parties' contributions to savings and retirement in determining accustomed standard of living where evidence was presented that established a historical pattern of such contributions.

## 3. Divorce— alimony—pending equitable distribution claim

The trial court erred in an alimony action by speculating about the results of a pending equitable distribution between the parties. The issues of amount and whether a spouse is dependent may be reviewed after the conclusion of the equitable distribution claim. N.C.G.S. § 50-16.3A(a).

RHEW v. RHEW

[138 N.C. App. 467 (2000)]

Appeal by defendant from order entered 6 October 1998 by Judge L.W. Payne in Wake County District Court. Heard in the Court of Appeals 23 February 2000.

*Sokol & Lefante, P.A., by Elizabeth C. Todd and William L. Ragsdale, for plaintiff-appellee.*

*Tharrington Smith, L.L.P., by Carlyn G. Poole, Jaye Meyer, and Suzanne G. Richards, for defendant-appellant.*

EDMUNDS, Judge.

Defendant appeals from an order finding her not to be a dependent spouse and denying her claim for alimony. We vacate the order and remand to the district court for further action.

Plaintiff James S. Rhew and defendant Luetta F. Rhew were married 25 November 1966. They separated 1 October 1995 and divorced 31 October 1997. Two children born of the marriage had reached the age of majority at the time of the parties' divorce. During their marriage, plaintiff obtained undergraduate and graduate degrees and was the parties' major financial support. Although defendant periodically worked, she devoted most of her time to the children and to the home.

Throughout their marriage, the parties enjoyed a comfortable standard of living. They budgeted a sizeable portion of their income to savings and retirement accounts. When the parties separated, plaintiff was earning $85,000 per year, while defendant was unemployed. After the separation, defendant, who was then approximately fifty years old, moved into her parents' home. At the time of the hearing, plaintiff's annual income exceeded $104,000, while defendant was earning $40,000 per year. After the hearing on defendant's claim for alimony, the trial court made the following pertinent findings of fact:

6. In 1994, the last full year of the marriage, the parties had about $5,000 per month of disposable income after deducting for taxes and savings. . . .

7. In 1995 the parties had about $4,000 per month of disposable income after deducting for taxes and savings. . . .

8. Since the date of separation defendant has resided with her parents and has had minimal expenses except for groceries.

**RHEW v. RHEW**

[138 N.C. App. 467 (2000)]

9. Defendant presently has substantial deductions from her bi-monthly salary for deferred compensation and stock purchases. It appears that she would have about $2,500 per month in disposable income if she had only mandatory deductions from her salary.

10. As of the date of this hearing the parties had not resolved their respective claims for equitable distribution. Defendant is entitled to an equitable share of the proceeds from the sale of the marital residence, a substantial amount of IBM stock, plaintiff's IBM retirement and the other assets of the marriage. After equitable distribution defendant will have the ability to make a substantial down payment toward the purchase price of a residence and should be able to finance the unpaid amount with a relatively small mortgage.

11. Defendant's claim for alimony is based in part on the argument that the accustomed standard of living of the parties included significant monthly contributions to savings. It does not appear that the appellate courts of this state have addressed this issue. However, the appellate courts have stated that the purpose of alimony is to provide "reasonable subsistence" to a dependent spouse. This Court understands "reasonable subsistence" to mean the necessities of daily living, including but not limited to shelter, utilities, food and clothing, but not including putting money away for the future. Based upon this understanding of the law of North Carolina and based further upon the estate of defendant as set forth in paragraph #10, the income of defendant and the disposable income of the parties during the last two years of the marriage as set forth in paragraphs #6 and 7, it appears that defendant has the ability to provide "reasonable subsistence" for herself consistent with the parties' accustomed standard of living and that she is not, therefore, a dependent spouse.

The trial court accordingly found that defendant was not entitled to alimony. Defendant appeals.

I.

[1] Defendant first argues the trial court erred by "fail[ing] to make the detailed findings of fact needed to determine dependency." Only a dependent spouse, that is, one "who is *actually substantially dependent* upon the other spouse for his or her maintenance and support *or is substantially in need of maintenance and support* from

the other spouse," N.C. Gen. Stat. § 50-16.1A(2) (1999) (emphasis added), is entitled to alimony in North Carolina, N.C. Gen. Stat. § 50-16.3A(a) (1999). To be "actually substantially dependent," a spouse must have "actual dependence on the other in order to maintain the standard of living to which he or she became accustomed during the last several years prior to the spouses' separation." *Talent v. Talent*, 76 N.C. App. 545, 548, 334 S.E.2d 256, 258 (1985) (citation omitted), *superseded on other grounds by* N.C. Gen. Stat. § 50-16.3A(a). If the trial court determines that one spouse is not *actually dependent* upon the other, the court must consider the second test set out in N.C. Gen. Stat. § 50-16.1A(2) and determine whether one spouse is "substantially in need of maintenance and support" from the other. In other words, the court must determine whether one spouse would "be unable to maintain his or her accustomed standard of living, established prior to separation, without financial contribution from the other." *Talent*, 76 N.C. App. at 548, 334 S.E.2d at 258-59.

Section 50-16.3A(b) directs the trial court to "consider all relevant factors" when making the determination of alimony and enumerates fifteen such relevant (but non-exclusive) factors. N.C. Gen. Stat. § 50-16.3A(b). " 'The trial court must at least make findings sufficiently specific to indicate that the trial judge properly considered each of the factors . . . for a determination of an alimony award.' " *Lamb v. Lamb*, 103 N.C. App. 541, 545, 406 S.E.2d 622, 624 (1991) (quoting *Skamarak v. Skamarak*, 81 N.C. App. 125, 128, 343 S.E.2d 559, 561 (1986) (citations omitted)); *see also Patterson v. Patterson*, 81 N.C. App. 255, 343 S.E.2d 595 (1986) ("The analysis under this test . . . requires detailed and specific findings by the trial court."). "In the absence of such findings, appellate courts cannot appropriately determine whether the order of the trial court is adequately supported by competent evidence, and therefore such an order must be vacated and the case remanded for necessary findings." *Talent*, 76 N.C. App. at 548-49, 334 S.E.2d at 259 (citation omitted). Accordingly, " '[t]he requirement for detailed findings is thus not a mere formality or an empty ritual; it must be done.' " *Lamb*, 103 N.C. App. at 545, 406 S.E.2d at 624 (quoting *Skamarak*, 81 N.C. App. at 128, 343 S.E.2d at 562 (citation omitted)).

Plaintiff contends that defendant presented insufficient evidence to enable the trial court to make detailed findings of fact. However, a review of the record reveals that substantial evidence was presented to the court. On 31 October 1997, defendant submitted an affidavit to

the court listing her monthly income and expenses. Her monthly gross income was $3,333 and her monthly expenses (including, *inter alia*, medical, entertainment, insurance, and 401(k) savings) totaled $2,445. Although she lived with her parents at the time of the hearing, on the basis of her prior expenses she estimated additional monthly expenses (including house payment, power and water, homeowner's fees or maintenance, property insurance, etc.) to be $2,241.

During the hearing on defendant's claim for alimony, defendant indicated her desire to move into a home of her own. She testified as to an affair plaintiff had from 1976 to 1981, but about which she had not become aware until 1989. She testified about her health problems. Upon being diagnosed with cancer shortly after the parties' separation, she underwent a mastectomy in November 1995, followed by reconstructive surgery. She needed to see a neuromuscular therapist once a week, but because those visits were not covered by her insurance, she had to reduce her visits to once a month. Defendant also testified that she takes medication for diabetes and depression and had been diagnosed with Attention Deficit Disorder.

As to her monthly expenses, defendant testified that she based the estimated $2,241 mortgage and utility expenses that she would have to pay upon moving out of her parents' home on the similar expenses incurred while married. She testified that her automobile expenses included $70 or $80 per month in gasoline, approximately $300 every six months for auto insurance, and $1,050 on recent car repairs. She testified that her medical expenses not covered by insurance averaged $784 per month. She paid $220 per month for health insurance and contributed $667 per month to her 401(k) plan.

Defendant testified that during their marriage, the parties went on vacations, weekend trips, boat outings, etc. When defendant was working, the parties employed a domestic. During their marriage, the parties made regular donations to their church, went out regularly to dinner and movies, and entertained friends at their home. Defendant testified she was unable to maintain that same standard of living at the time of the hearing, but that if she received contributions from plaintiff, she would be able to own her own home.

Defendant also called plaintiff as a witness. He testified that he owned a 2,500 square-foot home on which he made monthly mortgage payments of $1,700. To make this payment, plaintiff had stopped his practice of devoting approximately 25% of his income to investing.

Plaintiff's total taxable income for 1997 was $104,413. At the time of the hearing, he entertained regularly. He indicated a vehicle debt of $30,000 because he needed to purchase a new car. He dined in restaurants approximately twenty times a month, and his monthly grocery bill was about $300 per month. Plaintiff spent $55 per month for medication for high blood pressure and diabetes. He paid $80 twice a month to have his home cleaned and estimated an additional $140 for maintenance that he may need. He had taken several trips in the six months prior to the hearing to such destinations as Nashville, Tennessee, and the Bahama Islands.

This evidence was sufficient to enable the trial court to consider the relevant factors and make specific findings of fact required by N.C. Gen. Stat. § 50-16.3A. However, the actual findings of fact made by the trial court and quoted above are insufficiently detailed or specific. Other than the parties' contributions to retirement and stock, the trial court made no findings regarding the parties' standard of living during the marriage, and beyond a finding that "defendant . . . has had minimal expenses," the trial court made no findings regarding the parties' respective living expenses since the separation.

Although we do not suggest that the court is required to set out specific findings as to each factor listed in section 50-16.3A(b), the court must provide sufficient detail to satisfy a reviewing court that it has considered "all relevant factors." In the case at bar, the order sets out defendant's income and concludes that she had the ability to provide herself reasonable subsistence. Although this conclusion undoubtedly is based on the evidence presented at the hearing, "[i]t is not enough that there is evidence in the record from which such findings could have been made because it is for the trial court, and not [the Court of Appeals], to determine what facts are established by the evidence." *Talent*, 76 N.C. App. at 549, 334 S.E.2d at 259 (citation omitted). Therefore, we vacate the order and remand this case to the district court for a redetermination of defendant's dependency and entry of judgment containing findings of fact sufficiently specific to show that the court properly considered the statutory requirements. *See id.* at 551, 334 S.E.2d at 260. On remand, the court in its discretion may receive additional evidence or enter a new order on the basis of evidence already received. *See* N.C. Gen. Stat. § 50-16.9 (1999) ("An order . . . for alimony or postseparation support, . . . may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested."); *Smith v. Smith*, 111 N.C. App. 460, 433 S.E.2d 196 (1993), *rev'd in part on*

*other grounds*, 336 N.C. 575, 444 S.E.2d 420 (1994), *and superseded by statute on other grounds as stated in Offerman v. Offerman*, 137 N.C. App. 289, 527 S.E.2d 684 (2000).

## II.

**[2]** Defendant also contends the trial court erred by failing to consider the parties' contributions to savings and retirement. In paragraph eleven of its order, the trial court declined to consider the parties' saving habits in determining whether or not to award alimony to defendant, stating that "reasonable subsistence" did not include savings for the future. However, shortly after the trial court entered its order, this Court stated that "the trial court can properly consider the parties' custom of making regular additions to savings plans *as a part of their standard of living* in determining the amount and duration of an alimony award." *Glass v. Glass*, 131 N.C. App. 784, 789-90, 509 S.E.2d 236, 239 (1998) (emphasis added). Although the Court in *Glass* properly identified the difficulty that might arise when a party increased or decreased his or her contribution to savings in order to manipulate an alimony award, no such problem exists here. Evidence was presented that established an historical pattern of such contributions, which satisfied the requirement in *Glass* that there be a custom of regular savings. Therefore, the trial court erred when it found in paragraph eleven of its order that "it appears that defendant has the ability to provide 'reasonable subsistence' for herself *consistent with the parties' accustomed standard of living*" without considering contributions to savings. (Emphasis added.) Upon remand, the trial court shall consider evidence pertaining to such savings made in accordance with a pre-existing pattern in determining defendant's accustomed standard of living and make findings of fact accordingly.

## III.

**[3]** Finally, defendant contends the trial court erred by speculating about the results of the pending equitable distribution between the parties. "The claim for alimony may be heard on the merits prior to the entry of a judgment for equitable distribution, and if awarded, the issues of amount and of whether a spouse is a dependent or supporting spouse may be reviewed by the court after the conclusion of the equitable distribution claim." N.C. Gen. Stat. § 50-16.3A(a). In the case at bar, no evidence was presented as to the likely outcome of the equitable distribution. Consequently, paragraph ten of the order is unsupported by evidence.

Vacated and remanded.

Judges LEWIS and JOHN concur.