BECKY D. PHILLIPS, Plaintiff v. JAMES A. PHILLIPS, JR., Defendant

No. COA06-1556

(Filed 7 August 2007)

**1. Divorce— alimony—dependent spouse**

The trial court did not err in an alimony case by its determination under N.C.G.S. § 50-16.1A(2) that plaintiff was a dependent spouse, because: (1) the trial court's findings include a description of the real property owned by each of the parties as well as their personal savings, thus satisfying the requirement to consider the parties' estates; (2) the findings indicate the standard of living established during the marriage and plaintiff's need for more space in order to maintain the standard of living of the spouse seeking alimony in the manner to which that spouse became accustomed during the last several years prior to separation; and (3) while it is true that plaintiff owned a condominium in fee simple, plaintiff's ownership cannot be weighed without consideration of the past use and intended future use of the condominium.

**2. Divorce— alimony—consideration of all relevant factors**

The trial court erred in an alimony case by failing to consider all relevant factors in determining the amount, duration, and manner of payment of alimony as required by N.C.G.S. § 50-16.3A(b), and the award of alimony is vacated and remanded for additional findings on all income, including medical benefits and any other benefits that function as income, because the trial court made no findings with respect to plaintiff's medical benefits or potential income from her IRA, although evidence of the sources of income was presented at the hearing.

**3. Divorce— alimony—stipulation—technical error**

Although the trial court made a technical error in an alimony case by finding that the parties stipulated that there would be no evidence pertaining to marital misconduct or fault, the error does not require reversal, because: (1) although defendant contends plaintiff admitted marital misconduct and fault by failing to respond to defendant's counterclaim, N.C.G.S. § 50-10(a) provides that the material facts in every complaint asking for a divorce shall be deemed to be denied whether the same shall be actually denied by pleading; and (2) while defendant is correct

that the parties did not stipulate on the record that there would be no evidence of marital fault, neither party presented evidence of marital misconduct or fault.

### 4. Divorce— alimony—notice of hearing

The trial court did not err in an alimony case by allegedly holding the trial without notice even though defendant contends he thought the hearing on 1 May 2006 would be a status conference only because on 23 March 2006 defendant signed a memorandum of judgment/order which stated any potential alimony issue is set for hearing on 1 May 2006.

### 5. Appeal and Error— preservation of issues—failure to object

Although defendant husband contends the trial court erred in an alimony case by failing to require plaintiff wife to produce bank records, this assignment of error is dismissed, because: (1) N.C. R. App. P. 10(b)(1) requires a party to have presented to the trial court a timely request, objection, or motion stating the specific grounds for the ruling the party desired the court to make in order to preserve a question for appellate review; and (2) defendant failed to make a timely request, objection, or motion at trial asking the court to enforce production of the bank records.

Judge JACKSON concurring in part and dissenting in part.

Appeal by defendant from order entered 16 June 2006 by Judge Beth S. Dixon in Rowan County District Court. Heard in the Court of Appeals 21 May 2007.

*Robert L. Inge for plaintiff-appellee.*

*James A. Phillips, Jr., defendant-appellant, pro se.*

MARTIN, Chief Judge.

Defendant appeals from an order filed 16 June 2006 ordering defendant to pay alimony of $700 per month to plaintiff for eleven years.

By judgment entered 9 March 2004, plaintiff and defendant were divorced. On 23 February 2005 the parties entered into a consent order providing for post separation support to be paid to plaintiff for twelve months, after which either party was given the right to calendar the issue of permanent alimony for hearing.

By agreement, the issue of alimony was set for hearing on 1 May 2006. After the hearing, the trial court determined that plaintiff was a dependent spouse substantially in need of maintenance and support, primarily so that she may obtain a suitable residence. The findings of fact noted that plaintiff owned a 930-square-foot condominium which had been and continues to be her mother's primary residence and which plaintiff's mother gifted to her for estate planning purposes. The court further found that plaintiff was living with her mother in the condominium at the time of the hearing and that such living arrangement did not allow plaintiff to keep her organ or her piano at her residence, and instead plaintiff was renting a storage unit for those items, as well as some of her other personal belongings.

With regard to the standard of living of the parties during the marriage, the court found that the marital home had been over 2,000 square feet and in need of repairs, that the parties had lived "comfortably but modestly," and that they "enjoyed some luxuries." Additionally, the court found that, in 2005, plaintiff's income was $29,840, and defendant's income was $74,704, and that defendant's future earning capacity was "substantial" while plaintiff's earning capacity was not as substantial. The court also made findings regarding property owned by the parties and their respective savings. Upon these findings, the court entered an order awarding alimony to plaintiff. Defendant appeals.

---

[1] Defendant first challenges the trial court's determination that plaintiff is a dependent spouse, asserting that the trial court failed to make findings of fact required under N.C.G.S. § 50-16.1A(2) and *Williams v. Williams*, 299 N.C. 174, 261 S.E.2d 849 (1980).

The trial court found: "Plaintiff is a dependent spouse and is substantially in need of maintenance and support from the defendant as she is unable to currently afford a suitable residence." Our General Statutes state: " 'Dependent spouse' means a spouse, whether husband or wife, who is . . . substantially in need of maintenance and support from the other spouse." N.C. Gen. Stat. § 50-16.1A(2) (2005). Our Supreme Court has further interpreted the meaning of "substantially in need" as "requir[ing] only that the spouse seeking alimony establish that he or she would be unable to maintain his or her accustomed standard of living (established prior to separation) without financial contribution from the other." *Williams*, 299 N.C. at 181-82, 261 S.E.2d at 855. In *Williams*, the Court supplied additional guidelines for

PHILLIPS v. PHILLIPS

[185 N.C. App. 238 (2007)]

determining when a spouse is "substantially in need of maintenance and support," as follows:

A. The trial court must determine the standard of living, socially and economically, to which the parties *as a family unit* had become accustomed during the several years prior to their separation.

B. It must also determine the present earnings and prospective earning capacity and any other "condition" (such as health and child custody) of each spouse at the time of hearing.

C. After making these determinations, the trial court must then determine whether the spouse seeking alimony has a demonstrated need for financial contribution from the other spouse in order to maintain the standard of living of the spouse seeking alimony in the manner to which that spouse became accustomed during the last several years prior to separation. This would entail considering what reasonable expenses the party seeking alimony has, bearing in mind the family unit's accustomed standard of living.

D. The financial worth or "estate" of both spouses must also be considered by the trial court in determining which spouse is the dependent spouse. . . .

*Id.* at 183, 261 S.E.2d at 856. Defendant argues that the trial court in the present case failed to make findings with respect to the financial worth or estate of the parties. However, the trial court's findings include a description of the real property owned by each of the parties as well as their personal savings, satisfying the requirement to consider the parties' estates.

Further, defendant contends that the court improperly considered plaintiff's ownership of the condominium, where the court made the finding "plaintiff does technically own this [condominium], however it is her mother's residence and her mother will reside there for the remainder of her life" because technical ownership is not a legal concept. Thus, defendant argues, the court failed to properly weigh this asset among the statutory factors for determining substantial need. Defendant's position fails to appreciate the meaning of the finding. Although we agree that the finding of technical ownership has no legal significance, the meaning of the finding remains intact. The court properly found that ownership of the condominium lies with

plaintiff. In further explanation of the nature of the use of the condo-
minium (despite plaintiff's ownership), the court specifically noted
that the condominium "is [plaintiff's] mother's residence and her
mother will reside there for the remainder of her life." This portion of
the finding indicates the standard of living established during the
marriage and plaintiff's need for more space "in order to maintain the
standard of living of the spouse seeking alimony in the manner to
which that spouse became accustomed during the last several years
prior to separation." *Id.* at 183, 261 S.E.2d at 856. When coupled with
the court's finding that plaintiff lacked adequate space in the condo-
minium to store her organ, piano, and other belongings previously
located in the parties' residence, the court's finding regarding owner-
ship of the condominium clearly corresponds to the factors enumer-
ated in *Williams*. The dissent takes issue with the court's finding
because plaintiff's ownership of the condominium is fee simple with-
out any reservation of a life estate for her mother or any other agree-
ment accompanying the deed evidencing plaintiff's mother's legal
right to remain in the condominium. Despite the absence of such evi-
dence, it is perfectly obvious from the finding that plaintiff's mother
deeded the condominium to plaintiff as part of an estate plan. While
it is true, as the dissent notes, that plaintiff owns the condominium in
fee simple, plaintiff's ownership of the condominium cannot be
weighed without consideration of the past use and intended future
use of the condominium. Accordingly, we conclude that the trial
court's findings were adequate to meet the requirements of N.C.G.S.
§ 50-16.1A(2) and *Williams*.

[2] By defendant's next argument, he contends the trial court vio-
lated N.C.G.S. § 50-16.3A(b), requiring the court to "consider all
relevant factors" "[i]n determining the amount, duration, and manner
of payment of alimony" and *Lamb v. Lamb*, 103 N.C. App. 541, 545,
406 S.E.2d 622, 624 (1991), requiring the court's findings to be
"sufficiently specific to indicate that the trial judge properly consid-
ered each of the factors." *Id.* Defendant asserts the trial court failed
to consider the "amount and sources of earned and unearned in-
come . . . including, but not limited to, earnings, dividends, and bene-
fits such as medical, retirement, insurance, social security or others"
and the "relative assets and liabilities of the spouses and the rela-
tive debt service requirements of the spouses." N.C. Gen. Stat.
§ 50-16.3A(b)(4), (10) (2005). To support this argument, defendant
notes that the court failed to make findings regarding plaintiff's
health insurance benefits and retirement benefits. Defendant also
notes that no monetary figure was given for the assets, liabilities,

and debt requirements of the spouses. We address this latter contention first.

N.C.G.S. § 50-16.3A(b)(10) does not require a recitation of the value of each of the assets, liabilities, and debts of the parties, but rather it calls for an assessment of the "relative assets and liabilities . . . and the relative debt service requirements of the spouses." N.C. Gen. Stat. § 50-16.3A(b)(10) (2005). The trial court's findings that plaintiff owned a condominium and had approximately $20,000 in assets and was paying $196 per month for storage and that defendant owned 50% of the building which houses his law firm, owned the marital home with an equity line of credit, had approximately $18,000 in assets, and owed $300 per month in buyout payment to a former law partner were "sufficiently specific to indicate that the trial judge properly considered each of the factors." *Lamb*, 103 N.C. App. at 545, 406 S.E.2d at 624.

With regard to defendant's contention that the trial court erred in failing to make findings regarding plaintiff's health insurance benefits, we agree. N.C.G.S. § 50-16.3A(b)(4) requires the court to consider the amount and sources of both spouses' income "including . . . benefits such as medical, retirement, insurance, social security or others." N.C. Gen. Stat. § 50-16.3A(b)(4) (2005). The court made no findings with respect to plaintiff's medical benefits or potential income from her IRA, although evidence of the sources of income was presented at the hearing. Without such findings, we cannot be sure "that the trial judge properly considered . . . the factor[]." *Lamb*, 103 N.C. App. at 545, 406 S.E.2d at 624. Therefore, we vacate the award of alimony and remand for additional findings on all income, including medical benefits and any other benefits that function as income, of which evidence was presented at the hearing.

[3] Defendant's third argument challenges the trial court's finding that "the parties . . . stipulated that there would be no evidence pertaining to marital misconduct/fault" because there was no such stipulation and contends that the court erred in failing to recognize plaintiff's admission of fault, barring her from claiming alimony. Defendant argues that plaintiff admitted marital misconduct and fault by not responding to defendant's counterclaim, relying on Rule 8(d) of the North Carolina Rules of Civil Procedure, which states "[a]verments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading." N.C. Gen. Stat. § 1A-1, Rule 8(d) (2005). Rule 7(a) categorizes a counterclaim as a responsive pleading, where

it states "[t]here shall be . . . a reply to a counterclaim denominated as such." N.C. Gen. Stat. § 1A-1, Rule 7(a) (2005). Defendant concludes that under the Rules of Civil Procedure plaintiff's failure to reply to his counterclaim amounts to an admission of his allegations. However, defendant overlooks N.C.G.S. § 50-10(a), which states "the material facts in every complaint asking for a *divorce* . . . shall be deemed to be denied by the defendant, whether the same shall be actually denied by pleading or not." N.C. Gen. Stat. § 50-10(a) (2005) (emphasis added). This Court in *Skamarak v. Skamarak*, 81 N.C. App. 125, 126-27, 343 S.E.2d 559, 561 (1986), applying § 50-10(a), deemed all allegations in defendant's counterclaim denied, where plaintiff filed no reply to the counterclaim. *Id.* While defendant is correct that the parties did not stipulate on the record that there would be no evidence of marital fault, nonetheless, neither party presented evidence of marital misconduct or fault. Thus, the court's finding of a stipulation is a technical error which does not affect the outcome of the order and, therefore, does not require reversal. *Home Ins. Co. v. Ingold Tire Co.*, 286 N.C. 282, 290, 210 S.E.2d 414, 420 (1974) ("[W]e decline to hold a technical oversight constitutes reversible error when its correction would not produce a different result.").

**[4]** Defendant next argues that the trial court committed reversible error and denied defendant the right to due process by holding an alimony trial without notice. Defendant asserts that he believed the hearing on 1 May 2006 would be a "status conference" only. This argument is without merit because on 23 March 2006 defendant signed a memorandum of judgment/order which stated "any potential alimony issue is set for hearing on May 1, 2006." Accordingly, defendant received adequate notice of the alimony hearing.

**[5]** Defendant's final argument is that the trial court committed reversible error by failing to require plaintiff to produce bank records. "In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make . . . ." N.C. R. App. P. 10(b)(1) (2006). Defendant did not make a timely request, objection, or motion at trial asking the court to enforce production of the bank records. Therefore, defendant did not preserve this assignment of error for review.

Vacated and remanded for additional findings.

Judge STEPHENS concurs.

**PHILLIPS v. PHILLIPS**

[185 N.C. App. 238 (2007)]

Judge JACKSON concurs in part and dissents in part with separate opinion.

JACKSON, Judge concurring in part and dissenting in part.

I concur fully with the majority opinion with the exception of the majority's conclusion regarding plaintiff's ownership of the condominium. Because I believe that the trial court failed to properly consider plaintiff's ownership of the condominium, I must respectfully dissent from the majority's conclusion that the trial court's findings satisfy the requirements set forth in section 50-16.1A(2) of the North Carolina General Statutes and our Supreme Court's opinion in *Williams v. Williams*, 299 N.C. 174, 183, 261 S.E.2d 849, 856 (1985).

In the instant case, the trial court found that "[p]laintiff is currently living with her 83 year old mother in a 930[-square foot] condo. Plaintiff's mother purchased the home in 1982 and deeded it to plaintiff in 1993 for estate planning purposes." The trial court further found that although "[p]laintiff does technically own this home, . . . it is her mother's residence and her mother will reside there for the remainder of her life." The majority opinion, in turn, finds no material fault with this finding.

Our courts have demonstrated a strong reluctance to impose restrictions upon title absent clear language to the contrary in the deed. *See, e.g., Station Assocs., Inc. v. Dare County*, 350 N.C. 367, 370, 513 S.E.2d 789, 792 (" 'The law does not favor a construction of the language in a deed which will constitute a condition subsequent unless the intention of the parties to create such a restriction upon the title is clearly manifested.' " (quoting *Washington City Bd. of Educ. v. Edgerton*, 244 N.C. 576, 578, 94 S.E.2d 661, 664 (1956))), *reh'g denied*, 350 N.C. 600, 537 S.E.2d 494 (1999). Here, there is no language in the general warranty deed limiting plaintiff's use of the subject property in favor of her mother. It is clear that plaintiff and her mother intended that the resulting conveyance would result in an estate held in fee simple. In fact, the deed itself imposes the affirmative obligation upon plaintiff to

> expressly assume[] and agree[] to be bound by and comply with all of the covenants, restrictions, terms, provisions and conditions as set forth in the Declaration and the By-Laws and any rules and regulations made pursuant thereto including, but not limited to, the obligation to make payment of assessments for the

maintenance and operation of the condominium project which may be levied against such unit.

No right is given to nor obligation imposed upon plaintiff's mother in the deed. She merely grants all of her interest in the condominium to plaintiff in "fee simple" according to the express terms of the deed.

Although plaintiff's mother continues to reside in the condominium and, as the trial court found, plaintiff and her mother intend that she reside there for the remainder of her life, the record is devoid of any indication that plaintiff's mother reserved a life estate in the property or that plaintiff has conveyed any legally cognizable interest in the property to her mother. It is undisputed that plaintiff holds the property in fee simple, but the trial court diminished the significance of this legal interest by referring to plaintiff's interest in the property as mere "technical" ownership—a concept the majority correctly notes "is not a legal concept." However, because she holds title to the property in fee simple, plaintiff has absolute dominion over the property and may utilize the property as she chooses. As our Supreme Court noted over a century ago,

> [t]he right of property is that sole and despotic dominion which one man claims and exercises over the external things of the world, in total exclusion of the right of any other individual in the universe. It consists in the free use, enjoyment and disposal of all a person's acquisitions, without any control or diminution save only by the laws of the land.

*Vann v. Edwards*, 135 N.C. 661, 665, 47 S.E. 784, 786 (1904) (internal quotation marks and citation omitted). Although, the condominium may be, as the trial court found, the "mother's residence," it remains her residence only so long as plaintiff permits. Plaintiff's mother's ability and "right" to reside in the condo is wholly subject to the whim and caprice of plaintiff. *Cf. Nixon v. United States*, 978 F.2d 1269, 1286 (D.C. Cir. 1992) ("[T]he right to exclude others is perhaps the quintessential property right. Without this right, one's interest in property becomes very tenuous since it is then subject to the whim of others . . . ." (internal citations omitted)).

I believe that the trial court erroneously failed to consider the significance of plaintiff's fee simple interest in the condominium and, thus, did not properly determine the parties' financial worth as required by our Supreme Court's opinion in *Williams*. *See Williams*, 299 N.C. at 183, 261 S.E.2d at 856. Therefore, I would remand the case for proper consideration of the true nature of

plaintiff's ownership of the condominium and entry of corresponding findings of fact. Accordingly, I respectfully dissent as to this portion of the majority opinion.