HUNTER, JR., Robert N., Judge.
Sally J. Almason ("Sally"), appeals the 19 March 2015 order granting her ex-husband, David A. Almason ("David") alimony and legal fees related to the alimony litigation. Sally contends the trial court abused its discretion by improperly calculating both David's income and expenses, and erred as a matter of law by awarding legal fees to David. David cross-appeals, arguing the trial court erred by failing to identify and distribute post-separation growth on divisible property, prejudiced him by delaying the entry of the equitable distribution order, and erred as a matter of law in denying his motion for review of the equitable distribution order pursuant to North Carolina Rules of Civil Procedure 52, 59, and 60. After review, we remand both the equitable distribution order and the alimony order to the trial court for further findings of fact. We leave to the trial court's discretion to determine whether any additional hearings are needed to resolve the issues discussed hereinafter.
I. Facts and Procedural History
Sally and David Almason ("The Almasons") married on 30 June 1992. No children were born to the marriage. During the marriage, David cared for the home and family. Sally worked as an executive for the Cato Corporation, a Charlotte, North Carolina based retailer of women's clothing and accessories. Sally's salary and benefits provided the family with a comfortable lifestyle.
The parties separated on 30 April 2011. Prior to the separation, the Almasons executed a partial property settlement agreement ("the settlement agreement") dividing the majority of their property and awarding each party assets worth approximately $1.1 million. The Almasons subsequently agreed to equally divide all of Sally's benefits under Cato's Employee Stock Purchase Plan ("ESPP") and a portion of her benefits under the Employee Stock Ownership Plan ("ESOP"). As a result, the only property remaining to divide was: (1) Sally's shares of restricted Cato stock, including 10,150 vested shares and 16,682 unvested shares; (2) 3,603 unvested shares of restricted Cato stock awarded post-separation; (3) Sally's remaining assets in the ESPP; (4) post-separation dividends on the shares; (5) the portion of Sally's 2011 bonus earned prior to the date of separation; (6) the value of Sally's potential severance package; (7) Sally's insurance benefits; and (8) the value of Sally's unused vacation days.
Sally filed for absolute divorce on 25 September 2012. On 25 October 2012, David answered Sally's claim for absolute divorce and counterclaimed for post separation support, equitable distribution, alimony, and attorney's fees. On 21 November 2012, the trial court granted the parties an absolute divorce without ruling on David's counterclaims Sally filed a reply to David's counterclaims on 20 December 2012.
David's claims for post-separation support and attendant attorney's fees were heard in the trial court on 3 June 2013. On 28 June 2013, David filed a motion to amend his counterclaims, seeking support retroactive to the date of separation. On 15 July 2013, Sally filed a motion for leave to amend her complaint, seeking to include a claim that David had breached the settlement agreement by withholding property allocated to her in the settlement agreement. On 26 August 2013, the trial court entered an order granting David and Sally's motions to amend. Sally filed her amendment on 5 September 2013, and David filed his answer on 7 October 2013.
On 4 November 2013, the trial court entered an order granting David's request for post-separation support. The trial court found David was a dependent spouse, with a net monthly income of $3,466.59 and monthly expenses of $5,573.29, creating a shortfall of $2,106.70 per month. Increasing the award to account for income taxes, the trial court awarded David $3,000.00 per month in prospective support and $72,000.00 in retroactive support ("PSS Order"). The court granted Sally a credit of $17,000.00 for sums voluntarily paid during the two years between separation and the hearing, reducing David's retroactive support to $55,000.00. However, the trial court denied David's request that Sally pay the $20,216.00 in attorney's fees related to the PSS hearing. The trial court found the assets David had received under the separation agreement were sufficient to allow him "to employ legal counsel in connection with his claim for post-separation support."
The trial court heard David's claims for equitable distribution on 4 December 2013 and 8 January 2014, and entered its judgment on 2 October 2014 ("equitable distribution order"). The trial court distributed the restricted stock, the post separation dividends on the restricted stock, and the marital portion of Sally's 2011 bonus, but found Sally's severance package, insurance benefits, and paid time off were not subject to division because there was insufficient evidence of their monetary value.
As to Sally's restricted stock, the trial court found the 10,150 vested shares and 16,682 unvested shares granted prior to the date of separation were marital property. The court found the 3,603 unvested shares awarded to Sally in 2012 were compensation for her performance in 2011. Because the Almasons resided together for four months in 2011, the court found one-third, or 1,201 of these shares were divisible property. The court found Sally had not met the ownership requirements under Cato's restricted stock agreement and thus any attempt to dispose of either the vested or unvested shares would result in forfeiture of her unvested shares. Further, the court found because the shares become taxable upon vesting, Cato would have to sell forty percent of any tranche of vested shares to pay the federal and state income tax generated.
In determining the value of the shares, both vested and unvested, the trial court considered testimony from Sally's expert witness, Paul Saltzman, and found:
Although Mr. Saltzman considered several different valuation approaches, he used the asset approach, because Cato stock is publicly traded and the value of [Sally's] shares is related to the quantity of shares owned by her and the per-share value of the stock. The Court finds this to be an appropriate approach for valuing [Sally's] shares of Cato Restricted Stock.
The court subsequently found the market price on the date of separation was $25.41 per share. However, with respect to the value on the date of distribution, the trial court found "[i]t is unknown what the per-share value of Cato stock will be when [Sally] is able to liquidate her shares" because the market price of the shares had "fluctuated significantly" between $22.16 and $34.75 per share over the past year. As a result, the trial court found it was "reasonable to value [Sally's] shares of Cato Restricted Stock at $25.41 per share, both as of [date of separation] and currently."
Because the unvested shares would not be taxed until vesting, the court discounted their value by forty percent. The court rejected Sally's argument that all shares should be additionally discounted twenty-eight percent for lack of marketability, finding there was an equal risk the shares would increase or decrease in value during the restricted period.
The trial court distributed full ownership of the restricted stock, dividends, and bonus to Sally, but ordered she pay a distributive award of $284,269.80 to David, representing his share of the marital and divisible property. Sally tendered payment in the form of two checks payable to David on 6 October 2014. However, David refused to cash them, believing the notation "Final payment from equitable distribution award" on each check was a "calculated" effort to prevent him from appealing the equitable distribution order.
On 13 October 2014, pursuant to North Carolina Rules of Civil Procedure 52, 59, and 60, David filed a motion for review of the equitable distribution order ("Rule 52/59/60 motion"). The motion recites the court erred in failing to make an in-kind distribution of the restricted stock, miscalculating the tax burden on the various assets distributed by the equitable distribution order, failing to award him interest on the marital portion of the dividends, failing to consider several distributional factors, failing to make an unequal distribution in favor of David, and failing to value and divide Sally's severance, vacation, and sick leave pay.
On 17-18 November 2014, 6 January 2015, and 9 January 2015, the trial court heard David's claims for alimony. The trial court entered its alimony order on 19 March 2015. The trial court found David was the dependent spouse. It found David's net monthly income was $2,872.17 and his monthly expenses were $8,263.24. Finding a shortfall of $5,391.07 per month, the trial court awarded David an alimony payment of $7,416.00 per month, "grossing up ... to account for the tax impact of the alimony payments."
In arriving at this award, the trial court made no individual findings of fact as to the sources of either Sally or David's income, making findings only as to each party's total gross and net monthly income. Additionally, the trial court found the parties had an established a pattern of devoting a large part of Sally's income to savings during the marriage, amounting to $5,000.00 per month in the last six months before separation. Although the court "struggled" with the finding, it included $2,500.00 per month in savings as part of David's monthly expenses.
The trial court also found David was entitled to alimony retroactive to the date of separation. After applying $132,000.00 in credits for the forty-four months of post separation support Sally paid, the court found Sally had alimony arrears of $194,304.00. The court also found Sally should pay alimony as long as she continued to work. As a result, the court held the alimony obligation would last until the latter of Sally's intended retirement date of 1 July 2017 or the last day of the month in which she actually retires from Cato.
Finally, the court awarded David legal fees of $20,131.50, amounting to half of the $40,263.00 he incurred during the alimony trial. In awarding these fees, the court found Sally had not provided David with adequate support. Further, it found it was "difficult to find that [David] has insufficient means to prosecute this case, but at the same time it was necessary for him to do so. [David] should not be required to unreasonably deplete his estate to pay for his attorney's fees in this action."
On 30 March 2015, the trial court entered an order denying David's Rule 52/59/60 motion, holding the restricted stock was not susceptible to in-kind division, and holding the remainder of the claims had already been litigated at the equitable distribution hearing and at a 11 September 2014 post-trial conference.
Sally filed a timely notice of appeal from the alimony order on 14 April 2015. On 21 April 2015, Sally filed a notice of dismissal, voluntarily dismissing her breach of contract claim, thus disposing of the final pending claim between the parties. David filed his notice of appeal from the PSS order, the equitable distribution order, the alimony order, and the order denying his Rule 52/59/60 motion on 23 April 2015.
II. Jurisdiction
Sally and David both appeal final orders of the district court in a civil action. As a result, jurisdiction is proper in this Court under N.C. Gen. Stat. § 7A-27(b)(2) (2015). David's appeal of the equitable distribution order is timely under North Carolina Rule of Appellate Procedure 3(c)(3), as his timely made Rule 52/59/60 motion tolled the thirty day period for taking appeal. N.C.R. App. P. 3(c)(3) (2016).
III. Standard of Review
We review challenges to the trial court's decisions as to the amount of alimony for abuse of discretion. Quick v. Quick , 305 N.C. 446, 453, 290 S.E.2d 653, 658 (1982). We also review a trial court's equitable distribution award for abuse of discretion. White v. White , 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). Abuse of discretion occurs when the trial court's ruling is "manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." State v. Hennis , 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).
In an alimony case, the trial court may award attorney's fees if the court determines as a matter of law the dependent spouse is "without sufficient means to subsist during the prosecution of the suit and to defray the necessary expenses." Owensby v. Owensby , 312 N.C. 473, 475, 322 S.E.2d 772, 773-74 (1984). "Conclusions of law are reviewed de novo and are subject to full review." State v. Biber , 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011).
IV. Analysis
Sally and David both challenge portions of the alimony order. David cross appeals from the equitable distribution order and the denial of his Rule 52/59/60 motion. We will first address Sally's contentions with respect to the trial court's calculation of the parties' income and award of attorney's fees. We will then address David's contentions as to whether the trial court erred in its valuation of Sally's restricted stock grants. Because we reverse the equitable distribution order and remand for further findings of fact, we need not consider David's claims with respect to prejudicial delay or the Rule 52/59/60 motion.
A. Calculation of Income
Sally contends the trial court abused its discretion in calculating the amount of David's gross and net income, failing to consider income from David's IRA and potential income from investment of the proceeds from the equitable distribution order. Because the trial court failed to make specific findings as to each of the sources of Defendant's income, we cannot determine what role, if any these determinations played in the court's decision. Lacking findings on these two contested issues raised by Sally's counsel at trial, we must remand this matter to the trial court to make proper findings of fact as to the reasons these contentions were not meritorious.
While the trial court is given broad discretion in determining the "amount, duration, and manner of payment of alimony," the court must consider a series of statutorily defined factors, including the "amount and sources of earned and unearned income of both spouses, including but not limited to, earnings, dividends, and benefits such as medical, retirement, insurance, social security, or others[.]" N.C. Gen. Stat. § 50-16.3A(b)(4) (2015). In an order granting alimony, the trial court must set forth the reasons for the award, making "specific finding[s] of fact on each of the factors ... if evidence is offered on that factor." N.C. Gen. Stat. § 50-16.3A(c) (2015). The "trial court must at least make findings sufficiently specific to indicate that the trial judge properly considered each of the factors ... for a determination of an alimony award." Lamb v. Lamb , 103 N.C. App. 541, 545, 406 S.E.2d 622, 624 (1991). This requirement is "not a mere formality or an empty ritual; it must be done." Skamarak v. Skamarak , 81 N.C. App. 125, 128, 343 S.E.2d 559, 562 (1986).
Here, Sally presented evidence David received monthly income from his IRA. Sally also presented evidence of the potential income David could have received had he invested the award from the equitable distribution order. However, the trial court made no specific findings of fact with respect to either of these sources of income. As a result, "we cannot be sure that the trial judge properly considered ... the factor." Phillips v. Phillips , 185 N.C. App. 238, 243, 647 S.E.2d 481, 485 (2007) (internal quotation marks and citation omitted). Therefore, we vacate the alimony award and remand to the trial court for additional specific findings of fact on these sources of the parties' income.
B. Calculation of Expenses
Sally contends the trial court abused its discretion by erroneously including $2,000.00 per month in savings as part of David's monthly expenses for purposes of calculating his alimony award. Since the trial court's order is being remanded on the issues of income, we are also remanding the issue of savings as a portion of expenses so the court can make particularized findings as to whether the savings awarded to David serves a purpose related to the marital standard of living or merely allows him to accumulate wealth at Sally's expense.
A party seeking alimony must establish, inter alia , that he is a "dependent spouse." Barrett v. Barrett , 140 N.C. App. 369, 371, 536 S.E.2d 642, 644 (2000). See also N.C. Gen. Stat. § 50-16.3A(a) (2015) ("The court shall award alimony ... upon a finding that one spouse is a dependent spouse...."). A "dependent spouse" is one "who is actually substantially dependent upon the other spouse for his or her maintenance and support or is substantially in need of maintenance and support from the other spouse." N.C. Gen. Stat. § 50-16.1A(2) (2015). We have interpreted this to mean the relevant inquiry is "whether one spouse would be unable to maintain his or her accustomed standard of living, established prior to separation, without financial contribution from the other." Rhew v. Rhew , 138 N.C. App. 467, 470, 531 S.E.2d 471, 473 (2000) (internal quotation marks omitted)
"The determination of what constitutes the reasonable needs and expenses of a party in an alimony action is within the discretion of the trial judge, and he is not required to accept at face value the assertion of living expenses offered by the litigants themselves." Bryant v. Bryant , 139 N.C. App. 615, 618, 534 S.E.2d 230, 232 (2000) (quoting Whedon v. Whedon , 58 N.C. App. 524, 529, 294 S.E.2d 29, 32 (1982) ). In assessing these expenses, the trial court may consider monthly savings as a legitimate expense if the parties have a "custom of making regular additions to savings plans as a part of their standard of living[.]" Glass v. Glass , 131 N.C. App. 784, 789-90, 509 S.E.2d 236, 239-40 (1998).
However, this Court has repeatedly cautioned because "the purpose of alimony is not to allow a party to accumulate savings," the parties should not be able to "reduce his or her support obligation to the other by merely increasing his or her deductions for savings plans," or "increase an alimony award by deferring a portion of his or her income to a savings account." Vadala v. Vadala , 145 N.C. App. 478, 481, 550 S.E.2d 536, 539 (2001) (quoting Glass , 131 N.C. App. at 790, 509 S.E.2d at 239-40 ) (internal quotations and citations omitted). In other words, savings may be taken into account by the trial court in calculating the amount of alimony, to the extent that the parties representations about savings were not made to unjustly manipulate the amount of the award.
In the instant case, Sally does not claim either of the parties have used savings as a tool to increase or decrease the alimony award. Instead, she claims savings may only be awarded to allow the dependent spouse to fund his or her future retirement. Sally relies upon our decisions in Glass , Rhew , and Vadala , arguing that in each case, "the purpose of the parties' pattern of savings was to prepare for the parties' retirement at some future date." She also asserts "[i]t is common knowledge that people save money in order to eventually retire" and they stop saving upon reaching retirement age. Because David is already at "an age generally considered to be retirement age," Sally argues any further savings can only allow David to enlarge his estate at Sally's expense.
Sally's reliance is misplaced. While the parties in Glass , Rhew , and Vadala did contribute some or all of their savings to retirement funds, we have never held the trial court can consider savings only insofar as they go to fund the parties' eventual retirement. To wit, we stated in Glass and reaffirmed in Rhew and Vadala the trial court may consider the "parties' custom of making regular additions to savings plans , as a part of their standard of living," without reference to retirement or any other directed goal. 131 N.C. App. at 789-90, 509 S.E.2d at 239 (emphasis added). Thus, savings may be awarded for purposes other than the parties' eventual retirement, provided such purpose is connected to the preservation of the parties' marital standard of living.
Here, the trial court found the parties established a pattern of monthly savings during their marriage directed toward funding their retirement and awarded David half of the amount the parties saved each month. However, the court did not clearly tie this award to the preservation of the marital standard of living. The court made no findings of fact as to how the parties divided their accumulated marital savings. As a result, it did not consider whether those accrued savings were sufficient to serve the purpose established during the marriage, or whether further monthly savings were still necessary. Moreover, despite hearing testimony that David intended to use the saved money "in case I have to go into a home or I have serious medical expenses," the trial court made no finding as to David's intentions for any future savings. Nor did it make findings as to whether the intended use was related to the marital purpose.
As a result, while the existing record does not permit us to hold the trial court's ruling was arbitrary or manifestly unsupported by reason, it remains unclear whether an award of monthly savings to David truly preserves the marital standard of living. On remand, we urge the trial court to consider this fundamental question more closely, and to render particularized findings of fact identifying the role of savings in the marital standard of living and clarifying whether an award of monthly savings to David serves that role.
B. Attorney's Fees
Sally contends the trial court erred as a matter of law in awarding David a portion of his attorney's fees relating to the alimony trial. We disagree.
State law provides when a dependent spouse is entitled to alimony, he or she may also be entitled to an award of "reasonable counsel fees." N.C. Gen. Stat. § 50-16.4 (2015). Before awarding attorney's fees, the court must find three prerequisites: "(1) the spouse is entitled to the relief demanded; (2) the spouse is a dependent spouse; and (3) the dependent spouse has not sufficient means whereon to subsist during the prosecution of the suit and to defray the necessary expenses thereof." Rickert v. Rickert , 282 N.C. 373, 378, 193 S.E.2d 79, 82 (1972). Our courts have interpreted this last requirement to mean the dependent spouse must be "unable to employ adequate counsel in order to proceed as litigant to meet the other spouse as litigant in the suit." Hudson v. Hudson , 299 N.C. 465, 474, 263 S.E.2d 719, 725 (1980). Although it is sometimes appropriate to compare the two spouses' estates, the trial court should generally make this determination based on the disposable income and estate of the dependent spouse. Barrett , 140 N.C. App. at 374, 536 S.E.2d at 646.
Generally, "[t]he guiding principle behind the allowance of counsel fees is to enable the dependent spouse, as litigant, to meet the supporting spouse, as litigant, on substantially even terms by making it possible for the dependent spouse to employ adequate and suitable legal representation." Clark v. Clark , 301 N.C. 123, 136, 271 S.E.2d 58, 67 (1980). However, even where the dependent spouse has some means at her disposal, "the law does not impose upon her the obligation to deplete her separate estate to meet the financial burdens imposed" by the litigation. Id. at 137, 271 S.E.2d at 68. See also Cobb v. Cobb , 79 N.C. App. 592, 596-97, 339 S.E.2d 825, 828 (1986) ("It would be contrary to what we perceive to be the intent of the legislature to require one seeking an award of attorney's fees to meet the expenses of litigation through the unreasonable depletion of her separate estate....").
First, Sally contends the grant of attorney's fees for the alimony trial is incongruous with the trial court's denial of attorney's fees in the PSS order, arguing the trial court reached two different conclusions under essentially identical facts. However, the purpose of post separation support is "to function almost as a stop-gap measure to provides some support to a dependent spouse prior to the discovery of the data necessary for an alimony ... hearing." Wells v. Wells , 132 N.C. App. 401, 411, 512 S.E.2d 468, 474 (1999) (quoting Sally B. Sharp, Step By Step: The Development of the Distributive Consequences of Divorce in North Carolina , 76 N.C.L. Rev. 2090, 2092 (1998)) Thus, post separation support is "only intended to be temporary and ceases" upon entry of an alimony order. Langdon v. Langdon , 183 N.C. App. 471, 474, 644 S.E.2d 600, 603 (2007). Consequently, the "trial court's findings and conclusions [in regard to post separation support] are not binding in connection with the ultimate outcome of the claim for alimony," and are not relevant to our review of the alimony order. Id.
Next, Sally argues it would not be unreasonable for David to pay the full $40,263.00 of legal fees out of his $1.1 million estate, relying on our holding in Parsons v. Parsons , 231 N.C. App. 397, 752 S.E.2d 530 (2013). However, her reliance is misplaced. In Parsons , we held "it is not unreasonable to expect [the defendant] to pay $40,000 out of a $1.5 million estate to employ adequate counsel." Id. at 405, 752 S.E.2d at 536. Nevertheless, the defendant in that case had been awarded the full cost of her attorney's fees and argued "she should not be required to deplete her estate at all to pay for her counsel." Id. (emphasis added). Thus, our decision in Parsons turned on whether it was reasonable under those circumstances to require the supporting party to pay the entire cost of the alimony trial.
Here, the trial court awarded David only one half of his counsel's fees, leaving him responsible for a balance of more than $20,000.00. Moreover, during the pendency of the divorce, the trial court found Sally was not providing adequate support for David. David's expenses exceeded his net income by $5,391.07 per month. At the same time, the trial court found for the period of 1 May 2011 to 31 January 2015, Sally owed David $194,304.00 in alimony arrears, amounting to a support deficit of over $4,000.00 per month. While David's estate exceeds $1.1 million dollars, Sally possesses a comparable estate and a monthly income at the time of trial that exceeded her expenses by over $11,000.00 per month. Under such circumstances, we hold David possesses no disposable income with which to pay his legal fees, and do not require him to unreasonably deplete his estate to do so.
C. Restricted Stock Grants
In his cross appeal, David contends the trial court erred in failing to identify, classify, value, and distribute the post-separation growth on Sally's restricted stock grants. We agree in part and remand the equitable distribution order to the trial court for additional findings of fact so the post separation growth may be valued and distributed.
Although we review a trial court's equitable distribution order only for abuse of discretion, "there are still requirements with which trial courts must comply." Robinson v. Robinson , 210 N.C. App. 319, 322, 770 S.E.2d 785, 789 (2011). N.C. Gen. Stat. § 50-20(c) requires the trial court to "(1) determine what is marital [and divisible] property; (2) find the net value of the property; and (3) make an equitable distribution of that property." Id. (quoting Beightol v. Beightol , 90 N.C. App. 58, 63, 367 S.E.2d 347, 350 (1988) ) (internal quotation marks omitted).
In making these findings, "the court must be specific and detailed enough to enable a reviewing court to determine what was done and its correctness." Carr v. Carr , 92 N.C. App. 378, 379, 374 S.E.2d 426, 427 (1988). "It is not enough that evidence can be found within the record which could support ... classification; the court must actually classify all of the property and make a finding as to the value of all marital property." Robinson , 210 N.C. App. at 324, 770 S.E.2d at 790 (emphasis added).
In the first step of the process, "the trial court must specifically and particularly classify and value all assets and debts maintained by the parties at the date of separation." Dalgewicz v. Dalgewicz , 167 N.C. App. 412, 423, 606 S.E.2d 164, 171 (2004). This includes divisible property, which state law defines as encompassing:
[a]ll appreciation and diminution in value of marital property and divisible property of the parties occurring after the date of separation and prior to the date of distribution , except that appreciation or diminution in value which is the result of post separation actions or activities of a spouse shall not be treated as divisible property.
N.C. Gen. Stat. § 50-20(b)(4)(a) (2015) (emphasis added).
Our court has not adopted any single approach to valuing stock options, Fountain v. Fountain , 148 N.C. App. 329, 339-40, 559 S.E.2d 25, 33 (2002), or any other stock rights. Ubertaccio v. Ubertaccio , 161 N.C. App. 352, 356, 588 S.E.2d 905, 909 (2003). Where there is no settled approach as to the valuation of an asset, we will accept a method of valuation that "reasonably approximate[s] the net value of the [asset]" and is "based on competent evidence and on a sound valuation method or methods[.]" Fountain , 148 N.C. App. at 338, 559 S.E.2d at 32 (internal quotation marks and citation omitted). Because we review valuation for abuse of discretion, findings of fact concerning valuation are binding if supported by competent evidence. Id.
In its order, the trial court properly identified and classified the restricted shares awarded before the date of separation and the divisible portion of the restricted shares awarded after the date of separation. However, the court failed to justify its valuation decisions. Lacking a logical valuation calculation, the court could not have properly distributed the restricted shares.
The court valued these shares using only their market price as of the date of separation. In ignoring the post-separation change in value, the trial court departed from the method of valuation it adopted earlier in its order without providing adequate reasoning.
With respect to all of the contested shares, David correctly argues the trial court's use of the date of separation price to value the stock as of the date of distribution is arbitrary. The trial court explained its decision by referring to the fluctuation in the stock price, claiming there was no way to know what the stock price would be when Sally could liquidate the shares. However, a reasonable valuation methodology of future values based on present market value should account for future growth.
In its order, the trial court explicitly accepted the asset method of valuation and Mr. Saltzman's rationale for applying it, holding the asset approach was appropriate because "Cato stock is publicly traded and the value of [Sally's] shares is related to the quantity of shares owned by her and the per-share value of the stock."
Nonetheless, the court did not actually apply the standard as explained by Mr. Saltzman. For example, Mr. Saltzman's testimony provided for a twenty-eight percent discount for lack of marketability. In denying Sally this discount, the court found "the risk is equal between an increase and a decrease in value." At the same time, it found the volatility in the price was too great to properly consider the change in value between the dates of separation and distribution. Thus, the trial court's order failed to adequately explain why it substantially departed from Mr. Saltzman's approach.
While the court might have been free in its discretion to depart from the asset approach to adopt a valuation scheme better suited "to reasonably approximate the net value" of the shares, it failed here to make clear why it was departing from the asset approach, and failed to make adequate findings justifying this choice.
In using only the market price as of the date of separation to value all contested shares, the trial court failed to properly value the appreciation in value occurring between the date of separation and the date of distribution. Despite the fact the record contains evidence of the shares' value as of the trial date, the court made no finding of fact as to the change in value, failed to classify this change as marital, divisible, or separate property, and failed to distribute it amongst the parties accordingly.
With respect to the 3,603 shares granted post separation, there is uncontroverted evidence the shares were worth $28.23 per share on the day they were issued and $32.71 per share on the date of trial. There was no evidence before the court to support valuing these shares at $25.41 per share. As a result, the court failed to reach a reasonable approximation of the real value of the shares awarded post-separation.
Consequently, we hold the trial court abused its discretion by failing to use a method of valuation that "reasonably approximate[d] the net value" of the appreciation of all of the contested shares, and failed to approximate the value of the shares awarded post-separation. We vacate the equitable distribution order and remand to the trial court with instructions to value and distribute the post-separation change in value of all of the restricted shares, and properly value the shares awarded post-separation in accordance with a method of valuation that will reasonably approximate their value.
Because we vacate the equitable distribution order, we do not address David's claims with respect to the delay in entry of the equitable distribution order or the Rule 52/59/60 order.
For the foregoing reasons, the alimony order and the equitable distribution order are
REMANDED.
Report per Rule 30(e).
Judges ELMORE and DILLON concur.